

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE CLIFFORD KNIGHTS,       )
                               )
                Plaintiff,     )
                               )
        v.                     )       No. 02 C 5017
                               )
                               )       Judge Mark Filip
DEWAYNE E. WILLIAMS,           )
Correctional Officer,          )
SERGEANT DUNMARS,              )
Correctional Sergeant,         )
D JOHNSON,                     )
Correctional Lieutenant (K3-K9), )
EDMUND VICTOR BUTKIEWICZ,       )
Paralegal,                     )
                               )
                Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff, George Knights ("Knights" or "Plaintiff"), is incarcerated at the Stateville

Correctional Center in Joliet, Illinois, as a result of his 1970 conviction by jury for his role in the

execution-style murder of two ambushed Chicago Police Officers. Plaintiff is suing Defendants

DeWayne Williams ("Williams"), Sergeant Joel Dunmars ("Dunmars"), Lieutenant Darryl

Johnson ("Johnson"), and Edmund Butkiewicz ("Butkiewicz") (collectively "Defendants"), who

are all employees of the Illinois Department of Corrections. Plaintiff alleges that Defendants

unconstitutionally denied him access to the courts. (D.E. 1 (Compl.).) The case is before the

Court on Defendants' renewed motion for summary judgment ("Summary Judgment Motion")

(D.E. 48) and Plaintiff's motion to strike three affidavits submitted in conjunction with

Defendants' motion for summary judgment ("Motion to Strike") (D.E. 53). For the reasons

stated below, the Motion to Strike is denied, and the Summary Judgment Motion is granted.

# I.    Background

## A.    Local Rule 56.1

The relevant facts are taken from the parties' filings under Local Rule 56.1 ("L.R. 56.1"). As is the practice in this district, the Court only considers those facts or additional facts that are presented in conformity with L.R. 56.1.

The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance" with L.R. 56.1. *See Bordelon v. Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *accord Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809 (7th Cir. 2005). The Seventh Circuit and district courts have not been wedded to enforcement of the local rule as a matter of mere formalism. Rather, precedent acknowledges that it is a "reasonable judgment" that "consistent, 'bright-line' enforcement is essential"—not only in promoting compliance with the local rule, but also "to ensuring that [the] long-run aggregate benefits in efficiency" that L.R. 56.1 is intended to produce are realized for the system of justice in the Northern District of Illinois. *Midwest Imports v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995); *accord, e.g., Kozola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) (collecting cases). In addition, the process established in L.R. 56.1 (and its predecessor, L.R. 12(M) and (N)), helps focus and narrow the factual disputes so the court is not attempting to guess at what fairly can be argued and inferred from an often massive factual record; that dynamic helps to ensure that the summary judgment process best promotes fair results for all. In addition, the Court notes that while it is generally solicitous of *pro se* plaintiffs confronting the procedural requirements of summary judgment adjudication, precedent teaches that a *pro se* litigant is not exempt from meaningfully complying with L.R. 56.1 or provided blanket immunity

from the requirements of that Rule. *See, e.g., Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (St. Eve, J.) (collecting cases); *see also Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"); *Midwest Imports*, 71 F.3d at 1317 ("Rule 12(N) [a predecessor to L.R. 56.1] is straightforward and clear.").

In this case, Defendants provided Knights with the "Notice to Pro Se Litigants Opposing Summary Judgment" as required by L.R. 56.2, and the Court specifically admonished Knights that he would be expected to comply with L.R. 56.1. (*See* D.E. 50 (L.R. 56.2 notice); D.E. 44 ("Plaintiff is cautioned that in any future summary judgment briefing he will be required to comply with Local Rule 56.1.").) Despite these notices, Knights has substantially failed to comply with the requirements of L.R. 56.1 in his summary judgment filings. Thus, while cognizant of Knights's status as a *pro se* prisoner litigant, the Court will not consider facts or denials not properly put before the Court—whether by Knights or Defendants.[1]

Defendants filed a statement of facts pursuant to L.R. 56.1(a)(3) in conjunction with their motion. (D.E. 53.) Rather than, as the rule instructs, filing a response to Defendants' statement of facts (*see* L.R. 56.1(b)(3)(A)), and a separate statement of additional facts (*see* L.R. 56.1(b)(3)(B)), Knights has included additional facts within his responses.[2] (*See* D.E. 61 (Pl.'s

---

[1] The Court notes that, for the reasons explained below, summary judgment for Defendants would be proper even if the Court were to consider Knights's improper filings.

[2] The Court notes that Knights submitted a signed declaration with his summary judgment response. (*See* D.E. 61.) While this declaration may have been used by Knights to support his denials or additional statements of fact under L.R. 56.1, it is not a substitute for them. *See* L.R. 56.1(b)(3)(B) (non-movant's response to L.R. 56.1(a)(3) statement may include "a

3

Reply to Def.'s L.R. 56.1(a)(3)(B) Filing) ("Plaintiff's Response" or "Pl. Resp.").) The Seventh Circuit has consistently affirmed that this practice is improper under the rule and that statements contained in responses that go beyond what is necessary to justify a denial will not be considered. *See Cichon*, 401 F.3d at 809 (collecting cases); *Midwest Imports*, 71 F.3d at 1316-17.

Defendants, to their credit, attempted to identify the additional statements contained in Knights's response and responded to those statements. In doing so, however, Defendants have often responded to statements that constituted justifications for denial (as opposed to additional statements of fact) (*see, e.g.*, Pl. Resp. ¶ 11; Def. Reply ¶ 11), which effectively created "replies" that also are not allowed under the rule. *See Schulz v. Varian Med. Sys., Inc.*, 315 F. Supp. 2d 923, 925 n.1 (N.D. Ill. 2004); *accord Kozlowski v. Fry*, 238 F. Supp. 2d 996, 1000 n.2 (N.D. Ill. 2002) (citing *White v. Sundstrand Corp.*, No. 98 C 50070, 2000 WL 713739, at *2 (N.D. Ill. May 23, 2000), *aff'd*, 256 F.3d 580 (7th Cir.2001)). L.R. 56.1 was designed precisely to avoid this sort of procedural morass—both because the situation makes it difficult to identify the universe of actual, material, factual disputes, and also because the time required to decipher the parties' improper filings creates undue burdens on limited judicial resources that delay the courts' efforts to render decisions for other litigants. *Accord Midwest Imports*, 71 F.3d at 1316-17. Sorting the wheat from the chaff would take—and has taken—this Court needless hours that could have been devoted to other cases. *See Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003); *Bordelon*, 223 F.3d

---

statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including *references to the affidavits, parts of the record, and other supporting materials relied upon*") (emphasis added); L.R. 56.2 (Notice to Pro Se Litigants) ("If you choose to do so, you may offer the Court a list of facts that you believe are in dispute and require a trial to decide. Your list of disputed facts should be *supported by your documents or declarations*.") (emphasis added).

at 528-29 (affirming district court's decision to strike entire response to movant's statement of facts rather than searching for individual, proper statements; holding that "the purpose of [the predecessor rule of L.R. 56.1]—to require the parties to identify the disputed issues in a concise format—would be defeated if the court were required to wade through improper denials and legal argument in search of a genuinely disputed fact"); *Midwest Imports*, 71 F.3d at 1316-17. Thus, the Court disregards the additional statements of fact contained in the following paragraphs of Plaintiff's Response: ¶¶ 8, 11, 15, 23, 28, 31, and 32, as well as Defendants' responses to what it deemed were additional statements of fact.

Additionally, much of the evidence Knights uses to support his denials is improper. When denying a movant's factual allegations, "a general denial is insufficient." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Instead, "the nonmovant must cite specific evidentiary materials justifying the denial." *Id.*; *see also id.* (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying denial, is equivalent to admission). In deciding a summary judgment motion, a court may consider, along with deposition testimony and other material discussed in Federal Rule of Civil Procedure 56(c) and 56(e), "any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (internal quotations omitted). In particular, the Court notes that Plaintiff's Exhibit C, a purported affidavit by inmate Marvin Williams, fails to conform to the requirement that the affidavit be made under penalty of perjury. *See* 28 U.S.C. § 1746;[3] *Pfeil v. Rogers*, 757 F.2d 850,

---

[3] 28 U.S.C. § 1746 provides as follows:

Wherever, under any law of the United States or under any rule, regulation, order, or

859 (7th Cir. 1985). While Mr. Williams signed the document, he left blank the signature block under the statement that he understood that he was subject to the penalty of perjury pursuant to 28 U.S.C. § 1746. (*See* Pl. Resp., Ex. C.) The Seventh Circuit teaches that a court is not to be "unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution [of an affidavit] are satisfied," *Pfeil*, 757 F.2d at 859, but compliance with 28 U.S.C. § 1746 is mandatory and fundamental, not a "non-substantive" requirement. *Id.* (teaching that "affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury" and also that "unsworn documents purporting to be affidavits may be rejected") (citing 28 U.S.C. § 1746). The Court also notes that the purported affidavit is quite suspicious, in that the signer executed the document but specifically abjured from signing the portion of the document on the same page that would subject him to penalties for perjury for any false statement(s). In any event, the document is improper and will not be considered.

---

requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

\* \* \*

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)."

6

Knights also relies on several unsworn grievance forms that contain narratives of facts written by Knights. (*See* Pl. Resp., Ex. A, F, and M.) To the extent that the narratives are being offered for the truth of the matters asserted (*see, e.g.*, Pl. Resp. ¶ 8 (Knights's statement as to why he was placed in segregation)), these grievances constitute inadmissible hearsay. *See, e.g.*, *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial . . . except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed . . . ."). Where Plaintiff's denial of a properly supported statement of fact is insufficient for lack of record support, the Court deems that statement admitted. *See* L.R. 56.1(a), (b)(3)(B); *accord Malec*, 191 F.R.D. at 584 (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying denial, is equivalent to admission). Thus, the Court deems admitted the following statements from Defendants' L.R. 56.1(a)(3)(B) statement of facts ("Defendants' Statement of Facts" or "Def. SF"): ¶¶ 8, 11, 12, 13, 15, 17-24, 27-32, 36 (first sentence), 40a,[4] and 41.

Where Defendants failed to provide support for a statement that was not otherwise admitted by Knights, the Court disregards that statement. *See, e.g.*, *Malec*, 191 F.R.D. at 583 ("Factual allegations not properly supported by citation to the record are nullities."). Thus, the Court declines to consider paragraphs 10 and 25 in Defendants' Statement of Facts. Additionally, the Court disregards the second sentence of paragraph 36, which is an improper

---

[4] Defendants misnumbered their statement of facts after paragraph 40, such that the numbers 39 and 40 were repeated. The Court uses the designations 39a and 40a to refer to the second set of paragraphs with those numbers.

legal conclusion. *See, e.g.*, *Malec*, 191 F.R.D. at 583 ("[A] movant's 56.1(a) statement should contain only factual allegations. It is inappropriate to allege legal conclusions.").

    B.    Motion to Strike

In conjunction with their Summary Judgment Motion, Defendants filed affidavits submitted by Williams, Johnson, and Dunmars. (*See* D.E. 48, Ex. A, B and C.) Plaintiff argues in his Motion to Strike that the signatures on the affidavits are forgeries, offering comparisons between the affidavits and other documents Knights believes represent the signatures of the correctional officers.

The Court declines to strike the affidavits on the basis of Knights's comparisons. Knights offers no evidence beyond his personal speculation that the signatures are not authentic. He compares the two signatures of Dunmars and Johnson, and states, "I found that they were written by the same hand." (D.E. 53 at 2.) Knights also looks at two signatures purportedly written by Williams and stated, "I found that they were written by two different people not of the same hand." (*Id.*) With all respect to Knights, who provides no indication he has received training or has otherwise obtained expertise on the subject of handwriting analysis, this is simply not evidence of forgery—particularly in the face of (as explained further below) sworn testimony from the notary who notarized the respective documents in which the notary responds and swears that they were executed as represented.

In this regard, the Court notes that treatises on handwriting analysis teach that "no one ever writes one's name exactly the same way twice," Doris M. Williamson & Antionette E. Meenach, *Cross-Check System for Forgery and Questioned Document Examination* 1 (1981), and that any number of extenuating circumstances—such as, by way of example, an individual

8

having alternative styles, carelessness, or mere fatigue—can lead to fundamental differences in a single person's writing, *see, e.g.*, Roy A. Huber & A.M. Headrick, *Handwriting Identification: Facts and Fundamentals* 51-55 (1999). The self-serving speculation of a litigant who claims no expertise in the area of handwriting analysis is insufficient for the Court to disregard the sworn testimony of the notary, Daly Colwell, who witnessed and notarized the signatures of the three correctional officers.[5] (*See* D.E. 41, Ex. A.) Mr. Knights offers no evidence, and the Court finds no reason, to reject Ms. Colwell's testimony that the documents were signed by the Defendant-affiants as represented. The Motion to Strike is respectfully denied.

C.    Facts[6]

1.    Actions of Defendants

Knights is an inmate currently incarcerated by the Illinois Department of Corrections at Stateville Correctional Center ("Stateville"). (Def.'s L.R. 56.1(a)(3)(A) St. of Facts ¶ 1.) Dewayne Williams and Joel Dunmars were at all times relevant to this case correctional officers at Stateville, and Darryl Johnson was a correctional lieutenant. (*Id.* ¶¶ 2-4.) Ed Butkiewicz was at all times relevant to this case a paralegal at Stateville. (*Id.* ¶ 5.)

---

[5] The Court rejects Knights's suggestion that the issue would be cleared up by having Dunmars, Johnson, and Williams submit photos of their driver's licenses. Doing so would merely require the Court to engage in the same kind of handwriting comparison eschewed above. Again, Knights offers nothing other than his untrained and unsworn speculations; Defendants offer sworn testimony of the relevant notary verifying the signatures in question.

[6] Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court resolves genuine factual ambiguities in Plaintiff's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

On January 12, 2002, Knights was placed in segregation.[7]  (Def. SF ¶ 7.)  The prison's

property rules for inmates in segregation are more restrictive than for inmates in the general

population, so most of Knights's personal items had to go to the Personal Property department.

(*Id.* ¶ 8.)  Plaintiff was taken back to his cell to pack his property before he was escorted to

segregation.  (*Id.* ¶ 9.)  Plaintiff and his property boxes were taken to a holding cell (which

Knights refers to as the "bullpen"), where Officer Williams packed Knights's "essential items"

into his segregation bag.  (*Id.* ¶ 11.)  These are items, such as shower and hygiene items, that an

inmate might need until he is able to have the rest of his allowable property sent to him in

segregation.  (*Id.*)  This packing was done in Knights's presence.  (*Id.* ¶ 12.)

According to testimony offered by the Defendant correctional officers, inmates are able to

take some legal documents with them as essential items, but only an amount which fits in the

segregation bag (size not described).[8]  (Def. SF ¶ 13.)  On the day he was transferred to

segregation, Knights demanded to take all his legal materials with him, even though they did not

fit into his segregation bag.  (*Id.* ¶ 14.)  Defendant Johnson denied his request and escorted

---

[7] Defendants offer evidence that Knights was placed in segregation after he tested
positive for drugs.  (Def. SF ¶ 7.)  Knights attempts to dispute the reason for being placed in
segregation, and offers that he was sent there for filing a grievance against Defendant Williams.
(Pl. Resp. ¶ 7.)  Knights's evidence supporting this attempted denial is a grievance form filled
out by Knights, which constitutes inadmissible hearsay.  *See* discussion, *supra*.  In any event,
why Knights was placed in segregation is not material to his denial of access claim.

[8] Plaintiff attempts to create a dispute as to whether this is the prison rule by offering
what appears to be the personal property rules for the segregation unit which state that a prisoner
in segregation may have his legal materials "as needed."  (Pl. Resp. ¶ 13 (citing Ex. B).)  Even if
it is true that there is no limit on the amount of materials an inmate may have in segregation, this
does not create a dispute as to whether the amount is more limited on the initial transfer of the
inmate.  Thus, the Court deems this statement admitted.

Knights to segregation without any of Knights's legal materials.[9] (*Id.* ¶ 15, 16.) Defendant Williams delivered Knights's remaining property to Personal Property. (*Id.* ¶ 17.) Personal Property delivered Plaintiff's two legal property boxes to Plaintiff on January 13, 2002. (*Id.* ¶ 18.) Defendants Dunmars and Johnson never came into contact with Plaintiff's legal materials. (*Id.* ¶ 19.) Defendants Williams, Dunmars, and Johnson did not take or confiscate any of Plaintiff's legal property, nor did they order anyone else to do so. (*Id.* ¶ 20.) Knights never asked these three defendants for assistance in locating his legal documents. (*Id.* ¶ 21.)

Plaintiff asked Defendant Butkiewicz, the paralegal, for assistance in locating his legal documents. (Def. SF ¶ 23.) Butkiewicz arranged to have delivered to Plaintiff the boxes of excess legal documents that Knights had in storage with his name on them. (*Id.* ¶ 24.) In early 2002, Stateville Correctional Center's administration closed the satellite law library in its segregation unit. (*Id.* ¶ 39a.) Butkiewicz was not involved in the decision to close the satellite law library. (*Id.* ¶ 40a.) After the satellite law library was closed, legal services were provided to segregation inmates through paralegals and law clerks. (*Id.* ¶ 41.)

### 2. Underlying Cases

In his Complaint, Knights referenced three cases: "01-MR-762 Habeas Corpus, 3-01-0725 Civil Appeal, and 01-MR-810 Suit for Injunctive or Declaratory Relief," (Compl. ¶ 13),

---

[9] There is at least a dispute of fact as to whether Knights had any of his essential materials, including any legal materials, with him when he was escorted to segregation. (*See* Def. SF ¶ 16; Pl. Resp. ¶ 16.) While the Court disregards the unsworn "affidavit" of Marvin Williams for the reasons described, *supra*, it does not disregard Defendants' admission in their Answer that "Defendant Johnson then escorted plaintiff and inmate Williams to the Segregation unit without any of his legal materials or other property." (D.E. 13 (Answer) ¶ 18).) Even if the admission is not binding, the factual dispute must be resolved in Knights's favor on summary judgment. This dispute, however, is not material to the outcome of the case.

11

and included exhibits which show that 01-MR-762 was dismissed on Knights's own motion and that the Illinois Appellate Court dismissed 3-01-0725 (Compl., Ex. E, G, H, M). Knights offers no evidence on summary judgment that is properly before the Court as to the underlying grounds for these claims. Defendants, however, have submitted on summary judgment the Complaint for Injunctive Relief in 01-MR-810 (Def. SF, Ex. F); the Complaint for Habeas Corpus Relief in 01-MR-762 (*id.*, Ex. H); and the Complaint for Mandamus Relief in 01-MR-746 (*id.*, Ex. L), of which case 3-01-0725 was the appeal (*id.* ¶ 26). These cases are described in detail below.

## II.     Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.     Analysis

Plaintiff contends that Defendants violated his First, Sixth, Eighth and Fourteenth

Amendment right to access to the courts and, consequently, violated 42 U.S.C. § 1983.[10] To prevail on a claim under § 1983, Knights must prove that Defendants deprived him of a right guaranteed by the Constitution or laws of the United States, and did so while acting under color of state law. *Ross v. Town of Austin*, 343 F.3d 915, 917 (7th Cir. 2003). There is no dispute that Defendants acted under color of law (Def. SF ¶ 6), so the Court considers whether Knights was

---

[10] The Court notes that there are two issues mentioned in Plaintiff's summary judgment filings that are not part of the case before the Court. First, in his response brief, Knights at least arguably contends that the intentional taking of property, here his legal materials, by a state agent "violates the Due Process Clause of the 14th Amendment and is actionable under Section 1983." (D.E. 61 (Pl.'s Mem. of Law in Opp. to Def.'s Renewed Mot. for Summ. J. ("Pl. Resp. Br.") at 2-3.) Plaintiff did not allege in his Complaint any deprivation of property that created an injury apart from his claim for lack of access to the courts. Plaintiff also does not move to amend his Complaint to add any such allegation. To the extent that Plaintiff would seek to amend his Complaint to add such a claim for unconstitutional deprivation of property outside his denial of access claim, the Court almost surely would deny that request to amend. The request would be made at the eleventh hour, after discovery and summary judgment briefing had been completed and after the case was almost three years old. (The case had previously been briefed for summary judgment, but the Court denied the Defendants' motions without prejudice to ensure that Plaintiff had been given a full chance to present evidence that the underlying cases were not frivolous. (*See* D.E. 44.) That additional opportunity for Plaintiff produced a second round of summary judgment briefing.) Moreover, the Defendants have not had any opportunity to respond to that theory or to take discovery on it. *Accord Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774-75 (7th Cir. 1995) (collecting cases and noting that the Seventh Circuit has consistently affirmed denials of leave to amend made after defendant filed successful motion for summary judgment); *Cont'l Bank, NA v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (affirming district court's denial of leave to amend where amendment would have prejudiced defendant by necessitating additional discovery); *see also Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (holding that the burden on the judicial system from amendments made at the eleventh hour can justify a denial of a motion to amend even if there is no hardship to the opposing party). Additionally, Knights has offered no reason for his failure to include such a claim at an earlier stage in the litigation. *See Sanders*, 56 F.3d at 775 (reasons for denying leave to amend at late stage "hold[] particularly true where a plaintiff has provided no explanation as to why amendment did not take place sooner"). Second, Plaintiff seeks leave of the Court to amend his complaint to include an Eighth Amendment claim, but he does not offer any evidence (or even argument) that would support such a claim. (*See* Pl. Resp. Br. at 14.) For the same reasons described above—namely, prejudice to Defendants and to the Court from seeking leave to amend at this late date, as well as grounds of futility—the Court denies the request.

deprived of his constitutional right of access to the courts.

A prisoner's right of access to the courts includes both the right not to be obstructed by state actors in his attempts to present his claims to the courts, a right prisoners share with free persons, and the more limited right to receive the assistance necessary to enable him to present claims relating to the lawfulness or conditions of his confinement. *See generally Snyder v. Nolen*, 380 F.3d 279, 290-91 (7th Cir. 2004) (per curiam). Knights alleges violations of both, claiming that Williams, Dunmars and Johnson took or destroyed his paperwork, while Butkiewicz denied him assistance.

A.    Lack of Evidence of Interference

Given the Court's evidentiary rulings above, summary judgment is proper on the ground that Knights has failed to put any evidence properly before the Court from which a jury could find that any of the Defendants interfered with Knights's right to access the courts. Knights adduced no evidence that Defendant Butkiewicz intentionally failed to offer him any legal assistance. Nor is there any evidence before the Court that the other three Defendants deliberately lost or confiscated his legal materials. *See, e.g., Snyder*, 380 F.3d at 291 n.11 ("[W]e have made clear that an allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts.") (citations omitted); *see also Hossman v. Spradlin*, 812 F.2d 1019, 1022-23 (7th Cir. 1987) (teaching that the Due Process clause is "not implicated by a negligent act of a state official, nor by an intentional deprivation by a prison employee where the state has provided a meaningful post-deprivation remedy for the loss") (citations omitted). Indeed, despite an admonition from the Court in an Order on an earlier-filed motion for summary judgment (*see* D.E. 44), Knights has failed to produce evidence (or even

14

argue) what legal materials he was missing without which he was unable to prosecute his case. *See Hossman*, 812 F.2d at 1022 (holding that to survive summary judgment, plaintiff "should have stated with specificity exactly what materials he was deprived of and how such deprivation resulted in his being denied meaningful access to the courts to which he is entitled. . . . The mere assertion by plaintiff . . . that legal papers, transcripts and law books were intentionally kept from him fails, without more, to demonstrate a constitutionally significant deprivation of meaningful access to the courts.") (footnotes omitted); *Davis v. Bierman*, No. 01 C 6658, 2004 WL 161523, at *10 (N.D. Ill. Jan. 21, 2004) (Coar, J.) (holding plaintiff could not show prejudice in denial of access case where he "set forth no real argument or evidence concerning *how* the confiscation of the letter allegedly affected his attorney's ability to cross-examine or impeach [the witness] at the [] hearing") (emphasis in original). Plaintiff merely states that his "legal materials" were confiscated, and that he was denied access to a library containing "legal materials" and to "legal services" generally. (*See e.g.*, Pl. Resp. Br. at 2, 5, 7, 9-12.) These vague allegations are insufficient to survive summary judgment.

Additionally, in order for Knights to succeed on his § 1983 claim, he must show that each of the Defendants personally participated in or caused the unconstitutional actions. *See, e.g., Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (citing *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). The undisputed evidence before the Court shows only that Defendants Johnson and Williams were involved in transporting Knights to segregation and in getting his personal property together at that time. (Def. SF ¶¶ 14, 15, 17.) Knights has not

refuted the evidence that Defendants Johnson and Dunmars never came into contact with Knights's legal materials. (*See* Def. SF ¶ 19.) Even if his legal materials were lost, Knights has put forward no proper evidence on summary judgment indicating that Williams, Johnson, or Dunmars were responsible for that loss. On this record, no reasonable jury could find that Defendants intentionally interfered with Knights's access to the courts by obstructing his efforts to file a lawsuit or by failing to provide him assistance.

B. Failure to Demonstrate Actual Injury

Even assuming that Plaintiff had properly adduced evidence to support his allegations that Defendants intentionally interfered with his access to the courts, Knights's claim would fail for the independent reason that he has failed to demonstrate any actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349-51 (1996). The Supreme Court teaches that the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, to succeed on a denial of access case, the "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." *Id.* (quoting *Lewis*, 518 U.S. at 353 and n.3). In this regard, precedent teaches that "[t]o prove a violation [of the constitutional right of access to the courts] a plaintiff must demonstrate that state action hindered his or her efforts to pursue a non-frivolous legal claim and that consequently the plaintiff suffered some actual concrete injury." *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2004) (citing *Lewis*, 518 U.S. at 350-54).

In its earlier summary judgment Order, the Court noted Knights's failure to provide sufficient information regarding the substance of two of the three of the cases he mentions in his Complaint (indeed, the substance as to the third case—the complaint—was provided by

16

Defendants). (*See* D.E. 44.) The Court denied Defendants' earlier summary judgment motion without prejudice to allow Knights an additional opportunity to provide proof, if any exists, that Defendants prevented him from pursuing nonfrivolous claims. (*Id.*) Knights has not provided a single piece of evidence—or even an argument—in his response to the instant Summary Judgment Motion to prove the non-frivolousness or arguable merit of his underlying claims.[11] Rather, Knights argues that he has an absolute right to legal services. (*See* Pl. Resp. Br. at 2, 4-5, 13.) Precedent instructs, however, that Knights's argument is misplaced unless he can put forth some evidence that Defendants' alleged actions impeded his ability to pursue "a non-frivolous legal claim and that consequently the plaintiff suffered some actual concrete injury." *May*, 226 F.3d at 883.

In *Lewis v. Casey*, the Supreme Court held that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds v. Smith*, 439 U.S. 817, 825 (1977)). Knights's deficiencies on summary judgment are similar to those in *Tarpley v. Allen County, Indiana*, 312 F.3d 895 (7th Cir. 2002). In that case, the Seventh Circuit affirmed the district court's grant of summary judgment for the defendants where the plaintiff provided "no detail" about either of the underlying cases he claims he was prevented from pursuing. *Id.* at 899. The court held that plaintiff's "long list of deficiencies" was insufficient; "without evidence that the defendants

---

[11] In its previous Order, the Court also instructed Knights to promptly inform the Court if he "feels he is unable to obtain the court documents necessary to properly describe his underlying claims." (D.E. 44.) *See also* Fed. R. Civ. P. 56(f). Knights has not informed the Court of any unavailability of documents or testimony necessary to support his response to Defendants' Summary Judgment Motion.

prevented him from pursuing a nonfrivolous legal action, he cannot show that his constitutional right was violated." *Id.* (citing *Lewis*, 518 U.S. at 350-54, and *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998)). Similarly, Knights has listed a number of alleged actions taken, or not taken, by Defendants that prevented him from pursuing his three lawsuits. But he has adduced no evidence as to whether these three lawsuits were nonfrivolous, and summary judgment is independently proper for this reason.

In the alternative, Defendants, in addition to identifying Plaintiff's failure to adduce any evidence that the underlying claims were non-frivolous, have argued that Knights's underlying claims are frivolous. At the behest of the Court, Defendants have filed materials regarding Knights's underlying claims sufficient for the Court to review them for arguable merit. The Court reviewed those materials and finds that summary judgment is proper for the independent reason that Knights's underlying claims are frivolous.

       1.    Case No. 01 MR 762

Case 01-MR-762 is a Complaint for Habeas Corpus Relief filed November 5, 2001, in the Circuit Court of Will County in which Knights challenges his denial of parole. (Def. SF ¶ 34; *id.*, Ex. H (Habeas Compl.).) On March 2, 2002, the defendants filed a motion to dismiss. (*Id.* ¶ 36.) On March 16, 2002, Knights apparently asked the court for a six-month extension of time to file a response to the motion to dismiss (*see* Pl. Resp. ¶ 37; *id.*, Ex. V (motion for extension of time)), but it is unclear from the record whether this request was granted. On May 6, 2002, Knights filed a motion for leave to withdraw his habeas case, which was granted on May 10. (Def. SF ¶¶ 37, 38.)

By way of background regarding the habeas proceeding, Knights was convicted in 1970

18

by a jury for the execution-style murders of two Chicago police officers, and he received concurrent sentences of 100-199 years for each. (Habeas Compl. at 1; D.E. 48, Ex. J.) In his Habeas Complaint, Knights asserted that he should be released for three reasons. First, Knights noted that Illinois law directed the judge sentencing him to impose a sentence "proportionate to the seriousness of the offense," 730 ILCS 5/1-1-2(a) (formerly Ill. Rev. Stat., Ch. 38, § 1001-1-2), and that a second statutory provision directs the Prisoner Review Board (the "Board") to deny parole to a prisoner if "his release at that time would deprecate the seriousness of his offense," 730 ILCS 5/3-3-5(c)(2) (formerly Ill. Rev. Stat., Ch. 38, §1003-3-5). For the state to consider the seriousness of his offense twice, Knights argued, amounted to double jeopardy in violation of the United States and Illinois Constitutions because denial of parole imposes an additional penalty for the same crime. (*See* Habeas Compl. at 4.) In other words, Knights complained that in addition to being imprisoned, he had been forced to suffer the additional punishment of not being released early on parole. Second, Knights argued that because Illinois law does not provide objective standards for release on parole, the decision to grant or deny parole is arbitrary and violative of the Constitution. (*Id.* at 5.) Third, Knights argued that the Board's decisions impermissibly lengthen his original sentence because they take into account that Knights's victims were police officers. (*Id.* at 7.) According to Knights, because the fact that his victims were police officers was not charged in his indictment or proven beyond a reasonable doubt, the Board's consideration of this fact violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (*Id.*)

This claim for habeas relief is frivolous in the sense that it is "groundless in light of legal principles and decisions," *United States v. Eggen*, 984 F.2d 848, 850 (7th Cir. 1993), because

well-settled Illinois law holds that a prisoner is not entitled to habeas relief for denial of parole where he has not served his maximum sentence. In *People v. Spivey*, 141 N.E.2d 321 (Ill. 1957), the Illinois Supreme Court held,

> Parole is a matter of grace and not of legal right. A convict cannot invoke it at his own will and has no right to demand that he be discharged before the expiration of the maximum term of his sentence. . . . Neither prisoner had the legal right to release prior to the expiration of his full term of life imprisonment. The court could not legally discharge them prior thereto upon the mere showing that they had not been admitted to parole, or because the court might feel that the denial of parole was unreasonable, or that the period of years served was sufficient to justify the ends of justice. A court has no jurisdiction in a habeas corpus proceeding to enter an order for a prisoner's release because of equitable considerations and no right to exercise clemency through its own processes.

*Id.* at 325-26 (internal citations omitted). The Illinois Supreme Court has repeatedly affirmed *Spivey*'s teaching that parole is not a right which can be reviewed by the courts except under specific, limited circumstances, none of which are applicable here. *See, e.g., Hanrahan v. Williams*, 673 N.E.2d 251, 255 (Ill. 1996) (citing numerous cases, including *Spivey, supra*).

Illinois specifically limits the authority of its courts to grant discharges in habeas corpus proceedings. The Illinois Supreme Court instructs that "[t]he remedy of habeas corpus is available in a limited number of situations including obtaining the release of a prisoner incarcerated by a trial court without subject matter jurisdiction or personal jurisdiction over the defendant or where a post-conviction occurrence entitles a prisoner to release." *Hughes v. Kiley*, 367 N.E.2d 700, 702 (Ill. 1977). Review of claims that are non-jurisdictional in nature, or do not involve an assertion that the petitioner is entitled of right because of a post-conviction occurrence to immediate release, "is not available by means of habeas corpus even though a denial of constitutional rights is involved." *Id.* (collecting numerous cases); *accord, e.g., Barney v. Prisoner Review Bd.*, 704 N.E.2d 350, 351 (Ill. 1998). Of particular importance for Knights's

20

demand for early parole, Illinois law explicitly states that a prisoner is *not* entitled to discharge where he is in custody "by virtue of a final judgment of any circuit court, or of any proceeding for the enforcement of such judgment, unless the time during which such party may be legally detained has expired." 735 ILCS 5/10-123(2) (section of Illinois habeas corpus statute entitled "When prisoner not entitled to discharge"); *accord Barney*, 704 N.E.2d at 351; *Jones v. Brantley*, 259 N.E.2d 33, 34 (Ill. 1970) ("An indeterminate sentence is for the full term fixed by law for the crime, and inasmuch as parole is a matter of grace and executive clemency rather than legal right, a prisoner cannot invoke it at his will and has no right to demand that he be discharged before the expiration of the maximum term of his sentence.") (internal quotation marks and multiple citations omitted); *People v. Burbank*, 439 N.E.2d 554, 556 (Ill. App. Ct. 1982) ("[W]here the legality of the original imprisonment is not challenged, the inquiry is ordinarily limited to determining whether the maximum term for which the defendant was sentenced has expired or has lawfully terminated.") (citing *Spivey, supra*). Given that Knights's sentence of 100-199 years has not expired, nor is he alleging, in any event, that the trial court had no jurisdiction over him or that a post-conviction occurrence entitles him to relief as of right, Knights's claim for habeas relief in Will County is legally groundless and therefore frivolous.[12] *Accord, e.g., Barney*, 439 N.E.2d at 557 ("For a court to order a *habeas corpus* discharge before the petitioner's sentence is completed on the basis of an erroneous or inequitable denial of parole, would exceed its authority

---

[12] Knights alludes to a section in the Illinois habeas corpus statute that teaches that a litigant's having sought the wrong remedy is not fatal if the plaintiff nonetheless has a winning claim. However, Knights has offered nothing to suggest that his claim—which fundamentally founders on the fact that he is seeking a declaration of his legal right to a matter that is viewed as an prerogative of executive grace—would be no less defective if framed, for example, as a mandamus claim or as a request for injunctive relief.

under the [Illinois] Habeas Corpus Act and constitute an act of clemency, a function vested in the executive, not judicial, branch.") (citing *Spivey, supra*).

2.    Civil Appeal No. 3-01-0725

In case 00-MR-746, Plaintiff sought mandamus relief in the Circuit Court of Will County to compel the Department of Corrections to provide him a copy of the summary report concerning a "Program Unit Hearing," which was allegedly conducted after Knights received a disciplinary report for allegedly violating a direct order. (Def. SF ¶ 27; *id.*, Ex. L.) When Plaintiff requested a copy of the summary report, he was told by a prison administrator that he would not get a summary because the "ticket" (presumably the disciplinary report) had been expunged. (*Id.* ¶ 27.) The trial court granted defendant's motion to dismiss on August 23, 2001, on the grounds that there was no clear right to the relief requested, as is required under Illinois law. (*Id.* ¶ 29; *id.*, Ex. O (order of Circuit Court of Will County, Illinois, dismissing case because "the court finds that there is no clear right to the relief requested").) On January 11, 2002, the Third Appellate District ordered Plaintiff's appellate brief stricken because he had failed to cite to the record, as required by the court's rules, and ordered him to file a brief by February 1, 2002, that complied with the rules. (*Id.* ¶ 30.) Plaintiff did not file a corrected brief, nor did he request more time to file one. (*Id.* ¶¶ 31, 32.) Plaintiff's appeal in 3-01-0725 was dismissed on February 14, 2002. (*Id.* ¶ 33.)

An action for mandamus is the appropriate proceeding to compel IDOC to follow its own rules. *Turner-El v. West*, 811 N.E.2d 728, 733 (Ill. App. Ct. 2004). A plaintiff seeking mandamus must demonstrate "that he has a clear right to the relief requested, there is a clear duty on the part of the defendant to act, and clear authority exists in the defendant to comply with an

order granting *mandamus* relief." *Id.* (citing *Baldacchino v. Thompson*, 682 N.E.2d 182, 186 (Ill. App. Ct. 1997)). Knights asserted that Illinois Department of Corrections administrative rules gave him a clear right to the summary, citing 20 Ill. Admin. Code § 504.80(o):

> A copy of the disciplinary report and Adjustment Committee summary shall be forwarded to the Chief Administrative Officer for review and approval and a copy shall be filed in the committed person's master record file. The committed person shall be given a copy of the Adjustment Committee summary.

Any hearing would have taken place before the Stateville Program Unit, rather than the Adjustment Committee, because Knights was charged with only a minor violation. *See id.* § 504.50(d)(3). Nevertheless, section 504.100(k) appears to at least suggest that Program Unit hearing summaries be treated in the same manner as Adjustment Committee summaries. *Id.* § 504.100(k). This presupposes, of course, that a hearing summary existed. The Defendant maintained (and Plaintiff does not dispute) that the ticket had been "expunged," and a ticket may be expunged at the investigative stage, short of any hearing. *See id.* § 504.50(c)(4); *id.* § 504.50(d)(1). Even if a hearing was held, the Program Unit Hearing Officer also can expunge the ticket. *See id.* § 504.80(k). In addition, nothing in that subsection mandates that a summary report must be generated on an expunged ticket, and other portions at least suggest by negative implication that a statement of reasons or summary of reasoning is needed when, for example, the prisoner is found to have committed the offense, when exonerating evidence is presented and disregarded, or when disciplinary action is recommended, none of which took place here. *See id.* § 504.80(l)(2), (3). Mandamus under Illinois law is an extraordinary remedy, and requires a showing of, *inter alia*, a clear right to the relief requested and a concomitant clear duty on the defendant to act. The ambiguities identified above, and Knights's failure to cite a single case

23

requiring provision of any assumedly generated summaries for expunged tickets, all cut against the viability of any appeal of the Illinois Circuit Court's denial of mandamus relief.

In addition, by being deprived of his right to appeal the denial of mandamus, Knights lost no more than the possibility of obtaining a copy of a paper, which, if it existed at all, had no effect on his institutional record. Knights does not state what value a copy of this paper would have had to him, or to anyone else, for that matter. The Court can think of none.

As precedent makes clear, a plaintiff in a denial of access case "must demonstrate that state action hindered his or her efforts to pursue a non-frivolous legal claim and that consequently the plaintiff suffered some actual concrete injury." *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2004) (citing *Lewis*, 518 U.S. at 350-54). Knights does not even suggest any injury suffered by his failure to receive a summary of an episode that will have no effect on his institutional record. As a result, his claim fails for this independent deficiency, in addition to the others identified above.

### 3.    Case No. 01-MR-810

Case 01-MR-810 is a complaint titled "Suit for Injunctive Relief" seeking to compel the Illinois Prisoner Review Board to comply with Knights's Freedom of Information Act request for a copy of the "Rules of the Parole And Pardon Board." (Def. SF ¶ 39; *id.*, Ex. F.) Defense counsel sent Knights a copy of the requested rules after the case was filed, and the case was dismissed on July 25, 2002. (*Id.* ¶ 40.) Given that Knights obtained the relief he sought in this case, and that he has provided no evidence that would suggest he ever appealed—or intended to appeal—the dismissal, the Court finds that, even if Defendants somehow interfered with his prosecution of this case, Knights suffered no actionable harm.

Thus, because Knights has failed to demonstrate that Defendants prevented him from pursuing a nonfrivolous legal action, he cannot show that his constitutional right to access of the courts was violated. *See Tarpley*, 312 F.3d at 899.

## IV.   Conclusion

For the reasons stated above, the Court denies Plaintiff's Motion to Strike and grants Defendants' Summary Judgment Motion.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: __JUL 2 8 2005__